**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JESSY ROBERTS, and STEPHANIE BOYANSKI, on their own behalf and on behalf of their minor children, L.R. and E.B.,

Plaintiffs,

vs.

Civil Action No.: 5:25-cv-01715

WATERTOWN CITY SCHOOL DISTRICT, LARRY C. SCHMIEGEL, superintendent, in his individual and official capacities, BRIDGETTE R. GATES, teacher, in her individual and official capacities,

Defendants.

**COMPLAINT**

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs, Stephanie Boyanski and Jessy Roberts, on behalf of themselves and their minor children, L.R. and E.B. (hereinafter "Plaintiffs"), bring this action for declaratory, compensatory, and injunctive relief to vindicate their constitutional and civil rights to direct the moral upbringing of their minor children without government interference or coercion and to protect their children's right to be free from exposure to sexually explicit materials at school without parental notice or consent.

## INTRODUCTION

1. The Constitution of the United States of America protects the rights of parents to direct the religious and moral upbringing of their children. Public schools and their officials cannot use the power of the State to override those parental decisions or impose moral instruction contrary to the parents' requests and instructions. Yet, that is precisely what occurred here.

2. This case arises from the deliberate and unconstitutional actions of Defendants—officials and employees of Watertown City School District—who, under the guise of an art lesson, intentionally exposed approximately 100 seventh-grade students, including Plaintiffs' children, to pornographic and sexually explicit imagery over a two-week period in September 2025, without providing any advance notice to parents or offering an opportunity to opt out. Defendants' conduct demonstrates an overt disregard for parental rights, transparency, and religious liberty.

3. The exposure was not accidental or momentary. A seventh-grade Art teacher, Bridgette Gates, deliberately assigned students to visit an unvetted website containing numerous sexually explicit images, acknowledged in front of students that the images were "inappropriate," instructed students to "ignore them and be mature," and then required students to complete a graded assignment analyzing this pornographic content over multiple class periods spanning approximately two weeks.

4. The pornographic images students were required to view and analyze included, but were not limited to, explicit depictions of sexual acts, genitalia, genital mutilation, and group sex. These images were so graphic that local media outlets covering the controversy were forced to blur them in their reports due to their explicit nature. Through their actions, Defendants have violated well-established constitutional principles protecting both the free exercise of religion and the right of parents to control the moral and spiritual education of their children.

5. Absent relief, Defendants' actions will continue to chill the rights of Plaintiffs and similarly situated parents to religious liberty under the First Amendment and to the procedural and substantive due process guarantees protecting the parent-child relationship under the Fourteenth Amendment. The precedent created by Defendants' actions threatens to erode the constitutional boundary between state authority and family autonomy. Parents will be forced to choose between

sending their children to public school and preserving their ability to live out their faith—an intolerable choice that the First and Fourteenth Amendments forbid.

## JURISDICTION AND VENUE

6. This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, enforceable under the Civil Rights Act, 42 U.S.C. § 1983 *et seq*., which provides a cause of action against state officials who, under color of law, deprive individuals of constitutional rights.

7. This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. § 1331.

8. This Court has authority to award the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested compensatory and injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district and all the acts described in this Complaint occurred in this district.

## PARTIES

10. Plaintiff Stephanie Boyanski is a resident of the City of Watertown, Jefferson County, New York, and the parent of a minor child, E.B., enrolled in the seventh grade at Watertown City School District. Plaintiff Stephanie Boyanski brings this lawsuit on her own behalf and on behalf of her minor child, E.B.

11. Plaintiff Jessy Roberts is a resident of the City of Watertown, Jefferson County, New York, and the parent of a minor child, L.R., enrolled in the seventh grade at Watertown City School District. Plaintiff Jessy Roberts is a devout Christian whose sincerely held religious beliefs

guide every aspect of her family life, including the upbringing and education of her child. Plaintiff Jessy Roberts brings this lawsuit on her own behalf and on behalf of her minor child, L.R.

12. Defendant Watertown City School District ("the District") is a duly incorporated School District in the State of New York, with its principal place of business being 1351 Washington Street, P.O. Box 586, Watertown, New York 13601.

13. Defendant Dr. Larry C. Schmiegel is and was at all times relevant to this Complaint the Superintendent of Watertown City School District, tasked with managing the school system in Watertown. Dr. Schmiegel has supervisory authority over all principals, teachers, and staff within the District. Dr. Schmiegel has a managerial and supervisory role over District policy, including policies related to curriculum selection, parental notification, opt-out procedures, and teacher discipline. Defendant Schmiegel is sued in his official and individual capacities.

14. Defendant Bridgette Gates was a seventh-grade Art teacher employed by the Watertown City School District at Case Middle School. She is now a seventh-grade English teacher employed by the Watertown City School District at Case Middle School. Gates assigned students, including Plaintiffs' children, to view pornographic content, acknowledged its inappropriateness, failed to provide any safeguards or alternatives, and required students to complete graded assignments analyzing sexually explicit imagery over a two-week period. Defendant Gates is sued in her official and individual capacities.

15. All named Defendants are officials, employees, and representatives of Watertown City School District, acting under color of state law. Each Defendant, individually and collectively, is responsible for the policies, customs, and practices challenged in this action, which directly violated Plaintiffs' constitutionally protected rights.

## FACTUAL ALLEGATIONS

16. Plaintiffs are the parents of seventh-grade students enrolled in Watertown City Public Schools.

17. Jessy Roberts is a practicing Christian whose sincerely held religious beliefs require that she, not the State, direct the moral and spiritual formation of her child.

18. Stephanie Boyanski is a parent who places tight restrictions on the content her son views so as to protect her son's emotional well-being.

19. Both Plaintiffs believe that it is their roles as parents to instill good values into their children, such as respect, kindness, and empathy, and to shape their children's concept of sexuality, the world, and of different identities.

20. On or about September 13, 2025, Defendant Gates, a seventh-grade Art teacher at Case Middle School, assigned her students a project involving the artist Keith Haring.

21. In particular, students were instructed to visit www.haring.com and select two works of art from the 1980-1990 period to "interpret and sketch."

22. Gates provided students with a direct link to the Keith Haring Foundation website gallery: https://www.haring.com/!/year/1984.

23. Students accessed this website using their school-issued Chromebooks during class time.

24. The link to www.haring.com led students to galleries displaying the artist's work by year. These galleries contained numerous images, including explicit sexual acts, bodily mutilation, and other graphic content inappropriate for eleven- and twelve-year-old children. Examples of the images that the students viewed are attached as Exhibits 1–11.

25. The sexually explicit images accessible through the assigned website included, but were not limited to:

a. Explicit depictions of sexual intercourse in various positions;

b. Graphic images of male and female genitalia;

c. Depictions of genital mutilation and body mutilation;

d. Other sexually explicit content that would be considered pornographic under any reasonable standard.

26. Gates also showed some of the inappropriate images on the classroom's "Smart Board," which drastically increased the size, and therefore impact, of these images.

27. Gates acknowledged that "some of the images were inappropriate" and instructed students to "ignore them and be mature." Gates then continued with the lesson.

28. Students reported discussing that the images were inappropriate after this class.

29. Despite having acknowledged that the images were inappropriate, Gates did not notify parents of the incident, seek alternative resources about the artist that did not contain explicit sexual imagery, pre-screen or curate images that were appropriate, block or filter the content, or provide an alternative assignment.

30. Despite the initial reaction and incident, Gates continued to show these images to the students over multiple class periods, spanning approximately two weeks. With art class meeting every other day, this amounts to between four and six total class periods where inappropriate, sexually explicit, and pornographic art was shown to eleven- and twelve-year-old children. This was not an accidental or momentary exposure that was quickly rectified.

31. For Plaintiff Stephanie Boyanski's son, E.B., the exposure to sexually explicit imagery was emotionally distressing.

32. For Plaintiff Jessy Roberts's son, L.R., exposure to pornographic imagery at age eleven violated his mother's sincerely held religious beliefs and interfered with her right to control when and how her son receives information about human sexuality.

33. Plaintiff Jessy Roberts intended to educate her son about sexuality in accordance with her Christian faith and at a time she deemed appropriate based on his maturity level.

34. The District's actions usurped that parental role and exposed L.R. to pornographic content that directly contradicted the values Plaintiff Jessy Roberts sought to instill in him.

35. Both E.B. and L.R. have suffered harm from receiving conflicting moral messages from their parents on the one hand and school authorities on the other, creating confusion about family values during a critical developmental period.

36. It was not until on or about September 22, 2025, that Stephanie Boyanski and Jessy Roberts discovered the pornographic images after reviewing Google Classroom assignments on their children's Chromebooks.

37. Both Stephanie Boyanski and Jessy Roberts confirmed that the www.haring.com website contained multiple sexually explicit or offensive images and that their children had viewed these images as part of the assignment assigned by Gates.

38. Upon discovering the pornographic content, Plaintiff Jessy Roberts immediately contacted Gates directly by email and phone to express her concerns.

39. Rather than taking responsibility for exposing students to pornography, Gates deflected blame to the school's IT department, stating that the content "should have been blocked."

40. Gates acknowledged that she had instructed students to ignore inappropriate images, confirming that she was aware of the sexually explicit content on the website she had assigned.

41. Gates refused to take personal responsibility for directing students to an unvetted website containing pornography or for failing to implement any safeguards to protect students from such content.

42. Gates' response demonstrated a complete failure to understand the severity of exposing minors to pornographic content and an abdication of her professional responsibilities as an educator.

43. Plaintiff Stephanie Boyanski contacted school administrators to report the incident and express her concerns about the harm to her son and other students.

44. Plaintiff Stephanie Boyanski also contacted local law enforcement to report the incident.

45. On September 22, 2025, a Watertown Police officer who also serves as a school resource officer met with Plaintiffs outside the school.

46. School administrators claimed that the District had not been aware of the sexually explicit content until parents brought it to their attention.

47. Plaintiffs were not permitted to enter the school building or meet directly with Gates.

48. By September 23, 2025, Gates was reportedly placed on paid administrative leave pending investigation.

49. However, the District did not officially notify parents, including Plaintiffs, of this action or provide any information about the scope or timeline of the investigation.

50. The assignment link to the Keith Haring website was removed from Google Classroom shortly after parents complained.

51. The Keith Haring Foundation website was subsequently blocked on school-issued Chromebooks, confirming that the District recognized the content was inappropriate for students.

52. However, this action was taken only after approximately 100 seventh-grade students, including Plaintiffs' children, had already been exposed to pornographic content over approximately a two-week period.

53. Following the parents' complaints, the District issued a statement via its ParentSquare messaging system regarding the incident.

54. The District's statement claimed that students had "come across inappropriate content" during an art class assignment.

55. This language was deliberately misleading and false. It suggested that students had accidentally or inadvertently stumbled upon inappropriate content, rather than acknowledging the truth: that a teacher had deliberately assigned students to view a website containing pornographic imagery, had acknowledged its inappropriateness to students, and had required students to analyze such content for a graded assignment over a two-week period.

56. The District's statement contained no acknowledgment of wrongdoing, no apology to affected students or parents, and no explanation of what steps would be taken to prevent similar incidents in the future.

57. The District has never issued a corrected or accurate statement regarding the incident.

58. On or about October 7, 2025, a Watertown City School District Board of Education meeting was scheduled.

59. Multiple parents, including Plaintiffs Stephanie Boyanski and Jessy Roberts, expended costs of gas and other travel expenses to attend the meeting to express their concerns

about the District exposing their children to sexually explicit materials without parental notice or consent.

60. Prior to the meeting, Kevin Todd, president of the Watertown Education Association (the Teachers' Union), called for teachers to attend the school board meeting in solidarity with Gates.

61. In an extraordinary action demonstrating the District's support for the union's position, the District canceled all after-school activities on the day of the board meeting to allow staff to attend.

62. During the school board meeting, union president Kevin Todd publicly compared the parents' legitimate concerns about pornography being shown to their children to vandalism of his personal "Little Free Library" outside of his home.

63. Todd described concerned parents as "internet warriors," dismissing and denigrating parents who were exercising their constitutional rights to object to their children being exposed to pornographic content.

64. Todd's statements were calculated to intimidate, demean, and silence parents who dared to question the District's actions.

65. Throughout the meeting, no member of the Board of Education publicly responded to parents' concerns or acknowledged any wrongdoing by the District or its employees.

66. The Board's silence in the face of parents' legitimate concerns, combined with the orchestrated show of support for the offending teacher, sent a clear message: the District would not hold Gates accountable and would not take steps to prevent similar incidents in the future.

67. Local media covered the controversy surrounding the incident, and the story gained regional and national attention.

68. Media outlets reporting on the incident were forced to blur the images from the Keith Haring website in their coverage because the images were too sexually explicit to show unredacted.

69. The fact that professional journalists deemed the images too explicit to show without redaction to adult viewers underscores the egregious conduct of exposing eleven- and twelve-year-old children to such content in a mandatory educational setting.

70. To date, more than two months after the incident, Gates has faced no formal discipline for exposing students to pornography.

71. In fact, Gates resigned from the District as an Art teacher only to be immediately hired as an English teacher, where she will continue to teach the same students whose minds she has already polluted with pornographic images.

72. The District has not issued any updated policies regarding parental notification, opt-out procedures, or curriculum review to prevent similar incidents from occurring in the future.

73. The District has not provided any formal acknowledgment that the actions of Gates and District officials violated Plaintiffs' constitutional rights.

74. The District has not apologized to affected students or parents.

75. Parents, including Plaintiffs, continue to express concern regarding the school's handling of the incident and fear that similar violations will occur in the future.

76. The District's refusal to take meaningful corrective action demonstrates deliberate indifference to the constitutional rights of parents and the welfare of students.

77. Watertown City School District Policy 8301 governs the selection of curriculum materials, including textbooks and multimedia.

78. Policy 8301 provides that curriculum materials will be selected based in part on:

a. “Appropriateness to grade level as to vocabulary, sentence structure, and organization”;

b. “Levels of pupil maturity and experience necessary for empathetic reading of literature”; and

c. “Thematic treatment which promotes sound and healthy values for students.”

79. Watertown City School District Policy 8303 governs the selection of library materials and similarly emphasizes the educational standard and age appropriateness of materials for students.

80. Gates’ assignment requiring seventh-grade students to view and analyze pornographic imagery depicting genitalia, sex acts, genital mutilation, and group sex violated Policy 8301 in that:

a. The content was not appropriate to the grade level;

b. The content exceeded the maturity level of seventh-grade students; and

c. The pornographic content served no legitimate educational value that could not have been achieved through curated, age-appropriate resources.

81. On November 21, 2025, counsel for Plaintiffs sent a detailed demand letter to Superintendent Schmiegel outlining the constitutional violations, requesting specific policy changes, and demanding assurances that similar incidents would not occur in the future.

82. The demand letter specifically requested that the District: (1) place a letter of reprimand in Gates’ employment file; (2) adopt a policy prohibiting the showing of sexually explicit content to children without parental notification; (3) implement clear opt-out policies when curriculum includes sexually explicit material; and (4) provide and pay for counseling for students psychologically affected by viewing pornographic images.

83. The District failed to respond to the demand letter by the December 1, 2025, deadline, and has not responded to date.

84. The District's failure to respond demonstrates a deliberate choice to maintain the status quo and codify a policy of refusing to provide notice or an opportunity to opt out of sexually explicit materials.

85. Upon information and belief, the District has no affirmative policy prohibiting the exposure of students to sexually explicit material without parental notification and consent.

86. Upon information and belief, the District has no policy requiring teachers to pre-screen websites and online resources to ensure they do not contain sexually explicit content before assigning students to access such resources.

87. Upon information and belief, the District has no policy requiring parental notification and opt-out opportunities when the curriculum includes sexually explicit or sensitive material.

88. The District's failure to adopt and enforce such policies demonstrates deliberate indifference to the constitutional rights of parents and creates an unreasonable risk of future constitutional violations.

89. The violations described herein were not isolated incidents but rather resulted from official policies, customs, and practices of the District that demonstrate deliberate indifference to clearly established constitutional rights, including:

a. Absence of Mandatory Pre-Screening Policy: The District has no policy requiring teachers to pre-screen websites, online resources, or other materials before assigning them to students, despite the readily foreseeable risk that unvetted

internet content may include sexually explicit material. This absence of policy, in the face of an obvious need, constitutes deliberate indifference.

b. Absence of Parental Notification Policy: The District has no policy requiring advance parental notification when the curriculum will include sexually explicit, religiously objectionable, or otherwise sensitive content.

c. Absence of Opt-Out Policy: The District has no policy providing meaningful opt-out opportunities for parents who object to sexually explicit or religiously objectionable curriculum content.

d. Failure to Supervise/Train: The District has no system for reviewing or approving teacher-selected websites before students access them, no system for monitoring classroom content, and no accountability measures to ensure teachers comply with constitutional requirements. The fact that Gates could expose 100 students to pornography over two weeks without any administrative intervention demonstrates a complete absence of supervision.

e. Deliberate Indifference After Notice: The District's response to the November 21, 2025, demand letter demonstrates deliberate indifference. When explicitly informed of constitutional violations and requested to implement specific policy changes to prevent future violations, the District deliberately chose not to respond and not to make changes. This constitutes a policy decision by final policymakers to maintain practices that violate clearly established constitutional rights.

f. Post-Violation Policy Decisions: The decision to hire Gates as an English teacher, thereby allowing her continued contact with the students she harmed, was made by final policymakers with full knowledge of the constitutional violations. This

decision demonstrates an official policy of treating parental constitutional rights as subordinate to teacher employment interests.

90. Plaintiffs' children remain enrolled in Watertown City School District and continue to be at risk of future constitutional violations.

91. The District has not changed its policies or practices regarding parental notification or opt-out procedures for sexually explicit or sensitive content.

92. There is no reason to believe the District will honor future parental requests for notification or accommodation regarding sensitive curriculum content.

93. Plaintiffs face imminent and ongoing irreparable harm, including:

a. The loss of their fundamental right to direct the moral and religious upbringing of their children;

b. Ongoing psychological harm to their children resulting from exposure to pornographic content;

c. The inability to exercise informed control over their children's education;

d. The continued risk that their children will be exposed to additional objectionable content without notice or opportunity to opt out;

e. Loss of trust in the public education system; and

f. The potential need to remove their children from public school entirely to protect their parental rights.

94. The constitutional violations suffered by Plaintiffs constitute irreparable injury for which there is no adequate remedy at law.

95. The violations described herein were not isolated incidents but rather resulted from official policies, customs, and practices of the District, including:

a. A policy or custom of failing to notify parents in advance when the curriculum will include sexually explicit or sensitive content;

b. A policy or custom of failing to provide meaningful opt-out opportunities for parents who object to sexually explicit or sensitive curriculum content;

c. A policy or custom of failing to require teachers to pre-screen online resources and websites before assigning students to access them;

d. A policy or custom of inadequate supervision and oversight of teachers' curriculum choices;

e. A policy or custom of failing to discipline teachers who expose students to inappropriate content; and

f. A policy or custom of inadequate training regarding teachers' and administrators' obligations under the First and Fourteenth Amendments.

96. These policies, customs, and practices were the moving force behind the constitutional violations suffered by Plaintiffs.

97. Defendant Schmiegel, as Superintendent, has final policymaking authority for the District and is responsible for the policies, customs, and practices that caused the constitutional violations alleged herein.

98. Defendants' actions, unless restrained, will continue to deprive Plaintiffs and similarly situated parents of their rights to religious liberty, parental authority, and due process guaranteed by the First and Fourteenth Amendments.

## CAUSES OF ACTION

## COUNT I

**Violation of Plaintiff Jessy Roberts's First Amendment Right to Free Exercise of Religion**
(U.S. Const. amend. I; 42 U.S.C. § 1983)
(Claim Against All Defendants)

99. Plaintiff Jessy Roberts repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

100. Pursuant to 42 U.S.C. § 1983, Plaintiff Jessy Roberts brings this claim against Defendants for acting under color of state law to deprive her of her right to the free exercise of religion as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

101. Insofar as this claim seeks damages, it is brought against Defendants in their individual capacities. Insofar as it seeks injunctive relief, it is brought against them in their official capacities.

102. Plaintiff's sincerely held religious beliefs require that she direct the moral and spiritual education of her child in accordance with her Christian faith.

103. Plaintiff Jessy Roberts holds sincere religious beliefs regarding sexuality, sexual morality, and the age-appropriate education of children in matters relating to sex.

104. In particular, Plaintiff Jessy Roberts believes that:

a. Exposure to sexually explicit imagery is harmful to children and contrary to biblical teachings about purity, modesty, and sexual morality;

b. Education about human sexuality should be conducted in accordance with Christian values for those who have deeply held religious beliefs about human sexuality;

c. It is her role as a parent, not the government, to determine when and how her child receives information about human sexuality; and

d. Exposing her eleven-year-old son to pornographic imagery depicting sex acts violates her religious convictions about protecting childhood innocence and raising her child according to biblical principles.

105. Defendants' actions in deliberately exposing Plaintiff Jessy Roberts's son to pornographic content without providing advance notice or an opportunity to opt out substantially burdened her free exercise of religion.

106. The substantial burden imposed on Plaintiff's religious exercise includes:

a. Compelling her 11-year-old child to view pornographic imagery depicting sex acts during school hours under the authority of the state, in direct violation of her religious beliefs and practices;

b. Undermining Plaintiff Jessy Roberts's religious beliefs and practices by exposing her child to sexual content contrary to her faith and presenting such content as acceptable educational material from trusted authority figures (teachers);

c. Usurping Plaintiff Jessy Roberts's parental role in educating her child about sexuality in accordance with her Christian faith;

d. Forcing Plaintiff Jessy Roberts to engage in remedial religious instruction to counteract the government's conflicting moral messaging;

e. Requiring Plaintiff Jessy Roberts to discuss sexually explicit content with her 11-year-old child much earlier than she believed was appropriate or in accordance with her religious convictions;

f. Causing Plaintiff Jessy Roberts ongoing anxiety, loss of trust, and concern about future violations; and

g. It directly conflicts with core religious convictions regarding childhood innocence, sexual morality, and parental authority over religious education.

107. It is clearly established that government officials may not compel individuals to act in a manner that violates their sincerely held religious beliefs, nor may they penalize those who seek to exercise such rights.

108. Defendants' conduct is not justified by any compelling governmental interest and is not narrowly tailored to achieve any legitimate purpose.

109. Defendants' actions were neither neutral nor generally applicable but were conducted with deliberate indifference to religiously based parental objections.

110. Even *assuming arguendo* that a compelling interest existed to show children pornographic imagery, Defendants' actions were not narrowly tailored to achieve any legitimate purpose, as numerous less restrictive alternatives were available, including:

a. Providing advance notice to parents;

b. Offering opt-out opportunities;

c. Curating age-appropriate Keith Haring content without sexually explicit imagery;

d. Pre-screening the website before assigning it; or

e. Choosing different artists or assignments that did not involve sexually explicit content.

111. As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiff has suffered injury, including emotional distress, violation of her religious liberty, loss of parental autonomy, and deprivation of fundamental rights protected by the First Amendment.

## COUNT II

**Violation of Plaintiffs' Fourteenth Amendment Right to Substantive Due Process**
(U.S. Const. amend. XIV; 42 U.S.C. § 1983)
(Claim Against All Defendants)

112. Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

113. Pursuant to 42 U.S.C. § 1983, Plaintiffs bring this claim against Defendants for acting under color of state law to deprive them of their right to direct the upbringing and education of their children as protected by the Fourteenth Amendment.

114. This claim is brought by both Plaintiffs.

115. The Supreme Court has long recognized that parents have a fundamental liberty interest to direct the upbringing and education of children under their control.

116. This fundamental liberty interest includes the right to shield one's children from sexually explicit materials and to control when and how children receive information about human sexuality.

117. Defendants' decision to deliberately expose Plaintiffs' children to pornographic imagery without providing advance notice or an opportunity to opt out violated that fundamental right.

118. The District's actions reflect an arbitrary exercise of government authority that substitutes the State's moral judgment for that of the parent in violation of the substantive guarantees of the Fourteenth Amendment's Due Process Clause.

119. No reasonable school official could have believed that exposing eleven- and twelve-year-old children to pornographic imagery depicting sex acts, genitalia, genital mutilation, and group sex—without parental notice or consent—was constitutional.

120. The right of parents to control their children's exposure to sexually explicit materials and to direct their moral education is clearly established.

121. Defendants' conduct shocks the conscience and violates contemporary standards of decency.

122. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered irreparable injury to their rights as parents, including:

a. Loss of control over their children's moral and sexual education;

b. Exposure of their children to pornographic content contrary to their deeply held beliefs and values;

c. Psychological harm to their children;

d. Undermining of their parental authority; and

e. Loss of trust in the public education system.

123. Additionally, Defendants District and Schmiegel had a duty to properly supervise, train, and monitor teachers to ensure they do not expose students to inappropriate content.

124. Defendants failed to adequately supervise Gates' curriculum choices and classroom conduct.

125. Defendants failed to provide adequate training to teachers, including Gates, regarding:

a. The obligation to pre-screen websites and online resources before assigning them to students;

b. The obligation to avoid exposing students to sexually explicit content;

c. The obligation to respect parental rights and provide notice of sensitive content; and

d. Appropriate responses when teachers discover they have exposed students to inappropriate content.

126. Defendants failed to implement adequate policies and procedures to prevent teachers from exposing students to pornographic content.

127. As a direct and proximate result of Defendants' failure to properly engage in supervision and training, Plaintiffs have suffered the above injuries to their constitutional rights.

## COUNT III

**Violation of Plaintiffs' Fourteenth Amendment Right to Procedural Due Process**
(U.S. Const. amend. XIV; 42 U.S.C. § 1983)
(Claim Against All Defendants)

128. Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

129. Plaintiffs possess a liberty interest in the care, custody, and control of their children, which includes the right to make informed decisions concerning their children's education and moral upbringing.

130. The Due Process Clause of the Fourteenth Amendment requires that individuals be provided with notice and a meaningful opportunity to be heard before the government infringes upon a protected liberty interest.

131. Defendants deprived Plaintiffs of their liberty interest without due process of law by:

a. Failing to provide advance notice that classroom instruction would include exposure to sexually explicit content;

b. Failing to provide any opportunity for Plaintiffs to review the content before it was shown to their children;

c. Failing to provide any opt-out opportunity for Plaintiffs who objected to their children viewing pornographic content; and

d. Compelling Plaintiffs' children to view and analyze pornographic imagery for a graded assignment without affording Plaintiffs any opportunity to object or seek accommodation.

132. Defendants' policies and actions deprived Plaintiffs of those safeguards, resulting in the unlawful infringement of their rights.

133. Defendants' conduct was intentional, arbitrary, and in reckless disregard of Plaintiffs' constitutional rights.

134. Had Defendants provided advance notice that the assignment would involve exposure to sexually explicit content—or had Defendants simply reviewed the website before assigning it to students—Plaintiffs could have:

a. Opted their children out of the assignment;

b. Requested alternative assignments;

c. Discussed the content with their children in advance to provide appropriate context and guidance consistent with their family values; or

d. Taken other steps to protect their children and preserve their parental rights.

135. By failing to provide notice or opt-out opportunities, Defendants denied Plaintiffs any meaningful opportunity to exercise their constitutional rights before the violation occurred.

136. Defendants' conduct was intentional, arbitrary, and in reckless disregard of Plaintiffs' constitutional rights.

137. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered injury, including emotional harm, loss of trust in public educational institutions, and deprivation of their constitutional right to procedural due process.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants as follows:

A. A declaratory judgment pursuant to 28 U.S.C. § 2201 that Defendants, acting under color of state law, have violated Plaintiffs' rights to the free exercise of religion and to the care, custody, and control of their children, as guaranteed by the First and Fourteenth Amendments to the United States Constitution;

B. Injunctive relief, including enjoining Defendants, their agents, employees, successors, and all persons acting in concert with them from:

1. Exposing students to sexually explicit or pornographic content without providing advance notice to parents and a meaningful opportunity to opt out;
2. Requiring students to complete assignments involving sexually explicit content without providing alternative assignments for students whose parents object;
3. Assigning students to access websites or online resources without first pre-screening such resources to ensure they do not contain sexually explicit or otherwise inappropriate content;
4. Otherwise interfering with or retaliating against Plaintiffs for exercising their constitutionally protected rights as parents;

C. An award of compensatory damages, or in the alternative, nominal damages, for the violation of Plaintiffs' constitutional rights, including but not limited to the loss of parental autonomy, any costs associated with alternative educational opportunities, costs of redressing this unconstitutional act including travel expenses, and the chilling of religious and parental liberty;

D. An award of reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and any other applicable authority; and

E. Such further relief as this Court deems just and proper to secure the full enjoyment of Plaintiffs' constitutional rights.

**JURY DEMAND**

Plaintiffs demand trial by jury on all claims and issues so triable.

DATED: March 5, 2026.

Respectfully submitted,

/s/ Nathan J. Moelker
NATHAN J. MOELKER
(VA Bar No. 98313)
CHRISTINA A. COMPAGNONE**
(DC Bar No. 1657929)
THE AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Avenue, NE
Washington, D.C. 20002
Telephone: (202) 546-8890
Facsimile: (202) 546-9309
nmoelker@aclj.org
ccompagnone@aclj.org

GEOFFREY R. SURTEES**
(KY Bar No. 89063)
THE AMERICAN CENTER FOR LAW & JUSTICE
P.O. Box 60
New Hope, KY 40052
Telephone: (502) 827-0951
gsurtees@aclj.org

ABIGAIL SOUTHERLAND*
(TN 026608)
AMERICAN CENTER FOR LAW & JUSTICE
625 Bakers Bridge Avenue
Franklin, TN 37067
Telephone: (615) 599-5572
asoutherland@aclj.org

* Not licensed in this court, motion for PHV Pending.
**Admitted PHV.